## Cundiff v. Miller.

(Decided June 8, 1915.)

## Appeal from Breathitt Circuit Court.

Trusts—Agreement to Hold Land for Use of Another and to Reconvey—Termination by Release or Waiver.—Conceding that the evidence in this case shows the creation of a parol trust enforcible 'in law, such an abandonment and surrender of the rights of the cestui que trust is shown as estops him from their present enforcement.

W. L. KASH for appellant.

E. C. HYDEN for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

In 1910, the appellant, Joseph Cundiff, together with his brother, W. D. Cundiff, and W. D. Back, purchased a tract of land in Breathitt County, from J. D. Shackelford.

The purchase price was $2,200, and it was paid by Back, who obtained that sum by borrowing it of M. S. Crain, securing same by mortgage on his home farm.

By the terms of the agreement between Back and the two Cundiffs, each was to pay one-third of the purchase price of the land and each was to have a one-third interest therein.

At the time of the purchase the parties contemplated cutting and marketing the timber from the land, expecting in that way to pay the purchase price, or at least the greater part thereof. However, for some reason, the work was not commenced, and about two years after their purchase all of the parties seem to have concluded that there was some danger of suffering a loss instead of making a profit out of the transaction, as the Cundiffs proposed to Back that he pay them back what they had paid out and take the land, and Back countered with the proposition that they pay the remainder of his debt to Crain and take the land. At some time prior to these offers, the Cundiffs had each paid the sum of $500 on Back's debt to Crain, leaving still due thereon a balance of $1,482.04, including interest.

Joseph Cundiff thereupon entered into negotiations with the appellee, James Miller, with a view to inducing Miller to relieve the situation. Miller was endorser for Joseph Cundiff on notes aggregating $329.00, which were

held by the Breathitt County Bank, and upon the payment of which the bank was insisting.

These negotiations resulted in Miller paying Crain the $1,482.04 which was due to him from Back, and he also paid W. D. Cundiff the five hundred dollars which he had invested in the land, and paid off the notes owing by Joseph Cundiff to the bank.

Thereupon the two Cundiffs and Back conveyed to Miller the land in question, after which Back and W. D. Cundiff had no further connection with it. This controversy is waged between Joseph Cundiff and Miller.

Joseph Cundiff claims that he entered into a contract by parol with Miller, whereby Miller was to acquire the W. D. Cundiff half interest in the land, and he and Miller were to market the timber that was on it; that their original understanding was that they would mortgage the land to secure the money to pay Crain and to conduct the timber operation, but that the bank declined to make the loan to them jointly for the reason that he (Cundiff) had theretofore been negligent in caring for his notes which the bank held, and that because of that fact he conveyed the land to Miller to enable the latter to obtain money by the execution of a mortgage; that such conveyance was in trust only and upon the promise to reconvey the same to him when the timber was marketed and Cundiff's half of the purchase price paid in full. He further contended that Miller and he marketed the timber and that there was realized therefrom a sufficient profit to pay his share of the purchase price except $437.34, which he tendered to Miller and which Miller refused; and he brought this action to enforce the alleged trust.

The evidence concerning the agreement that was made between Joseph Cundiff and Miller in regard to this transaction is conflicting. Miller claims that there was an unconditional purchase of the land by him; that he purchased the half interest owned by W. D. Cundiff and paid him $500, and that he purchased Joseph Cundiff's half interest and paid him $500, $329 of this being paid by taking up the notes owing by him to the bank, and the remainder being paid to Cundiff direct. As stated above, he also paid the money which Back was owing to Crain, $1,482.04. Miller admits that he did tell Joseph Cundiff after this deal was made that if he would go to work and pay for one-half of the land it

would be conveyed to him; and from an examination of the evidence, we have no doubt that, whatever its details may have been, there was some kind of an arrangement entered into between Miller and Joseph Cundiff whereby Miller promised, upon condition that Cundiff would pay him one-half of the purchase price which he had paid for the land, he would convey to Cundiff a one-half interest therein.

The first summer after the conveyance to Miller and his payment of the sums heretofore mentioned, he and Cundiff cultivated a portion of the land and divided the crop; and Miller erected a house and barn on the land, fenced some of it and had some of it cleared. In the fall, when it came time to begin the work of removing and marketing the timber, by the sale of which it was hoped the purchase price of the land could be realized, Miller went ahead and had the timber cut and marketed. All the expenses of this work he paid himself.

He claims that before he went to work on the timber he called on Cundiff to "come with his part" of the expense, and that Cundiff said he had no money and would not be able to carry his share of the burden, and that if Miller would give him a job of log-hauling to enable him to get out of debt, he would release his claims to the land. Miller did this, and paid Cundiff for all work done by him in the timber operation.

On the other hand, Cundiff claimed that their contract was that Miller was to pay all the expenses of marketing the timber; and he denied that he released his rights under the contract claimed by him.

The proof shows that the cost of cutting and marketing the timber was $1,458.23, and that the sale price thereof was $2,492.90, leaving an excess of receipts over expenses of $1,034.67, derived by Miller from the timber.

It is also shown that he expended for improvements on the land $473.84; for miscellaneous expenses, $24.00; that he paid W. D. Cundiff $500; and paid Crain on the purchase price $1,482.04, making a total of $2,479.88. He also paid $329 to the bank upon notes owing by Joseph Cundiff; and claims that half of the interest that was due on the Crain debt and paid by him was chargeable to Joseph Cundiff; and that he also gave Cundiff a check for $100, which would make in all about $570 paid to Joseph Cundiff for his interest in the land. Cundiff claims this $100 check was for timber taken off his own

farm and marketed along with the timber off the tract here in controversy, while Miller claims that that timber was paid for through the account which Cundiff had with Miller, who conducted a store and furnished Cundiff merchandise therefrom. The parties had a running account consisting of a large number of transactions, and we are unable to ascertain the exact merits of these respective claims.

However, including the sum of $900 which Miller claims is a reasonable compensation for his services in directing and conducting the timber operations, and which we think not unreasonable, the record shows that he has expended the sum of $5,408.11 and received the sum of $2,492.90, on account of the tract of land here in controversy, so that its net cost to him has been $2,915.21; and this is all the land is worth.

Upon this basis, Cundiff, even under his own claim of the right to a re-conveyance, would not be entitled thereto except upon the payment of $1,457.60. His petition avers a tender of only $437.34; and we think that after the proof was in, it was his duty to have made an offer to do equity in accordance with the facts, no such offer being advanced in his petition.

Moreover, in addition to the release of his rights by Cundiff, as claimed by Miller to have been made at the time he commenced the work of removing the timber, it was shown in evidence that in the Breathitt County Bank, Cundiff, in the presence of the cashier of the bank, again declared to Miller his intention to release to Miller the rights he had in the land, and to assert no further claim thereto. So that, even if it be conceded that such a contract as Cundiff claims to have been made, was in fact made, and conceding that it was enforcible as a parol trust, still we think the weight of the evidence shows such an abandonment by Cundiff and surrender of such rights as he obtained thereunder as would preclude him from their enforcement under the circumstances presented by this record.

Miller has borne "the burden and the heat of the day," and such small reward as there is should be his. Appellant contributed neither time nor labor to the success of the undertaking; shared not in the responsibilities or chances of loss; and there is no equity in his claim to share in the profits, if any.

The chancellor's judgment was right; and it should be, and is, affirmed.